**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>LANARION NORWOOD | Civil Action No.<br>1:20-cr-00488-SDG-JSA-3 |

**OPINION AND ORDER**

This matter is before the Court on Defendant Lanarion Norwood's motion to suppress statements [ECF 45]. After careful consideration of the evidence presented at the suppression hearing,[1] as well as the parties' post-hearing briefing,[2] the Court **DENIES** Norwood's motion.

**I.   BACKGROUND**

On June 16, 2020, at the request of DEA agents and to assist in a larger drug-trafficking investigation, Georgia State Patrol Trooper Brodie Forrester stopped a vehicle driven by Norwood's co-defendant, McKinley Denson, in which Norwood was a passenger, for a window-tint violation.[3] Trooper Forrester conducted a

---

[1]   The hearing transcript (hereafter, Hr'g Tr.) is entered on the docket at ECF 74.

[2]   ECF 81 (Norwood's Post-Hearing Brief); ECF 88 (the Government's Post-Hearing Brief).

[3]   Hr'g Tr. 14:4–5; 58:16–36; 59:1–4.

search of the vehicle after detecting the odor of marijuana,[4] and discovered $80,000 in cash and a handgun.[5] The handgun belonged to Norwood.[6] Norwood, Denson, and the officers on the scene waited for over an hour for officers from the Chamblee and Brookhaven police departments to arrive to handle the marijuana and gun charges,[7] during which time DEA agents also arrived on the scene to handle the large amount of cash.[8]

All the officers involved, Norwood, and Denson, remained calm throughout the encounter.[9] Prior to his arrest, Norwood was never placed in handcuffs or otherwise physically restrained.[10] Norwood was not given warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), prior to his arrest. Norwood now seeks suppression of statements he made regarding his gun ownership over the course of the stop.

---

[4]  *Id.* at 56:8–18.

[5]  *Id.* at 20:21–25, 22:18–25.

[6]  *Id.* at 23:1–6.

[7]  *Id.* at 84:1–17.

[8]  *Id.* at 28:8–25.

[9]  *Id.* at 105:3–10.

[10]  *Id.* at 23:10–15.

## II.     LEGAL STANDARD

*Miranda* requires law enforcement officers to advise a person of certain constitutional rights, including the Fifth Amendment right against self-incrimination, before a custodial interrogation. 384 U.S. at 444. The right to such warnings attaches, therefore, "when custodial interrogation begins." *United States v. Acosta*, 363 F.3d 1141, 1148 (11th Cir. 2004). Courts generally apply a two-part test to determine whether a suspect is in custody for *Miranda* purposes: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Id.* (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).

Whether a defendant is in custody depends on "whether 'under the totality of the circumstances, a reasonable man in [the defendant's] position would feel a restraint on his freedom of movement . . . to such extent that he would not feel free to leave.'" *United States v. McDowell*, 250 F.3d 1354, 1362 (11th Cir. 2001) (citations omitted) (quoting *United States v. Moya*, 74 F.3d 1117, 1119 (11th Cir. 1996)). Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning.

*Howes v. Fields*, 565 U.S. 499, 509 (2012). "The test is objective: the actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant." *Moya*, 74 F.3d at 1119.

## III.  DISCUSSION

The Court must first determine whether, under the totality of circumstances, the stop conducted on June 16, 2020, restricted Norwood's freedom of movement to a degree associated with a formal arrest. The Court concludes that it did not.

### A.  The Purpose of the Stop

Norwood first argues that the traffic stop was a custodial interrogation because it was a coordinated, pre-planned interrogation in furtherance of a larger drug-trafficking investigation.[11] Norwood is correct that, though Trooper Forrester properly stopped the vehicle based on a window-tint violation, he did so at the direction of DEA to assist in its investigation.[12] The purpose of the traffic stop or what the officers knew at the time of the stop, however, are not considered in the Court's analysis. *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

The Court's inquiry is an objective one and "[a] policeman's unarticulated plan has no bearing on the question of whether a suspect was 'in custody' at a

---

11   ECF 81, at 12.

12   Hr'g Tr. 58:16–25; 59:1–4.

particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Id.* (officer's unarticulated intent to arrest defendant for traffic offense was irrelevant to whether defendant was under arrest); *Beckwith v. United States*, 425 U.S. 341, 347 (1976) (*Miranda* applicability should depend on the "compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions") (quoting *United States v. Caiello*, 420 F.2d 471, 473 (2d Cir. 1969)); *United States v. Phillips*, 812 F.2d 1355, 1361 (11th Cir. 1987) (same). The fact that Trooper Forrester conducted the traffic stop in conjunction with DEA and at DEA's direction does not transform the stop into a custodial interrogation.

### B.   The Traffic Stop

The parties dispute whether the traffic stop conducted by Trooper Forrester was an ordinary traffic stop as defined by the Supreme Court in *Berkemer*, 468 U.S. at 437–38. There, the court held that a person temporarily detained pursuant to an ordinary traffic stop is not "in custody" for *Miranda* purposes, despite the restraint on their movement, because the circumstances surrounding such a stop are noncoercive. *Id.* at 440. The Court clarified, however, that "[i]f a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that

renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." *Id.* at 440.

Norwood is correct that the traffic stop at issue goes beyond the ordinary traffic stop defined in *Berkemer*. The stop lasted for almost two hours and involved at least seven law enforcement officers. But these facts are not dispositive. Considering the totality of the circumstances, the Court finds that Norwood was not in custody during the traffic stop.

The Court is guided by the Eleventh Circuit's opinions in *Acosta*, 363 F.3d at 1150, and *United States v. Ubaldo-Viezca*, 398 F. App'x 573, 580 (11th Cir. 2010). In *Acosta*, the defendant was stopped in the parking lot of an apartment building and was approached by five or six officers, at least one of whom had his gun drawn. *Id.* at 1143. He was informed that he was not under arrest but that the officers had questions about a money laundering investigation. *Id.* The defendant was then patted down and consented to the search of the vehicle, which he admitted contained money, and to the search of a duffle bag which contained more money and heroin pellets. *Id.* At this point, about thirty minutes into the stop, the defendant was arrested. *Id.* at 1143, 1148.

After determining that the stop was a reasonable one under *Terry v. Ohio*, 392 U.S. 1, 88 (1968), the Eleventh Circuit held that the defendant was not in

custody during the stop and that no *Miranda* warnings were required prior to his arrest. *Id.* at 1150. Citing *Berkemer*, the Eleventh Circuit emphasized that the defendant was stopped in a public place, in broad daylight, and "[n]o physical force was used against him. He was not handcuffed. He was not even placed in a police car at the time. He was assured that he was not under arrest." *Acosta*, 363 F.3d at 1150. The Eleventh Circuit concluded that "[t]he totality of the circumstances were such that a reasonable person in Acosta's position would not have believed that he was utterly at the mercy of the police, away from the protection of any public scrutiny, and had better confess or else." *Id.*

Similarly, in *Ubaldo–Viezca*, the Eleventh Circuit found that the defendant was not in custody even though he was detained pursuant to a traffic stop for over an hour, during which he admitted to possessing kilos of cocaine. 398 F. App'x at 580. The Eleventh Circuit considered that the defendant consented to the search of his vehicle, which extended the time of the stop, he never objected to the length of the stop or indicated that he wished to leave, he was never physically restrained, and "the tone and nature of the interaction was casual, rather than serious." *Id.*

Here, like in *Acosta*, the traffic stop was conducted in broad daylight and in the driveway of an apartment complex, subject to public scrutiny.[13] Norwood was never physically restrained and both he and Denson were told that they were not under arrest.[14] Like in *Ubaldo–Viezca*, the tone of the entire stop was casual.[15] The officers and Defendants were calm and friendly to one another and no weapons were drawn.[16] Though they were detained and told that they could not leave,[17] the length of the stop, as well as the number of officers present on the scene, was attributed to jurisdictional issues and the need for the proper agencies to investigate the money, marijuana, and handgun found in the vehicle, and Trooper Forrester informed Norwood and Denson of this.[18]

In consideration of all the circumstances, the Court finds that a reasonable person in Norwood's position would not feel a restraint on his freedom of movement to a degree associated with a formal arrest. Norwood was therefore not

---

[13] Hr'g Tr. 56:8–18.

[14] Hr'g Ex. 2, Video 1 of 3, at 17:00–13; 23:10–15.

[15] Hr'g Tr. 105:3–10; 23:10–15.

[16] *Id.* at 23:10–15.

[17] Hr'g Ex. 2, Video 1 of 3, at 17:00–13.

[18] Hr'g Tr. 38:11–20; 66:25; 67:1–5.

entitled to *Miranda* warnings and the statements he made to the officers during the traffic stop will not be suppressed.

### IV. CONCLUSION

Norwood's motion to suppress statements [ECF 45] is **DENIED**.

**SO ORDERED** this 10th day of January, 2022.

Steven D. Grimberg
United States District Court Judge